## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 18-42471 |
| Christopher Charles Marsh and | ) | |
| Nicole Diane Marsh, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |

## MEMORANDUM OPINION AND ORDER

The question before the court is straightforward.  If, after the court confirms their chapter 13 plan, debtors sell property they owned on the petition date, do the debtors get to keep the proceeds from the sale or do those proceeds become property of the estate?  The answer to that question has proven somewhat elusive.  For the reasons explained below, the court determines (1) property of the estate that vests in the debtors at confirmation loses its status as property of the estate, but (2) proceeds from the sale of vested property are new property that replenish—and, therefore, become property of—the chapter 13 estate.

In this case, debtors Christopher and Nicole Marsh seek to retain proceeds from the post-confirmation sale of their residence.  The court determines that because the proceeds arose after confirmation and are distinct from the pre-sale unrealized appreciation in the residence, the proceeds are property of the Marshes' chapter 13 estate.  That determination, however, is only the first step in the court's adjudication of the Marshes' motion to retain.  Because the court requires additional evidence, it

does not presently rule on the motion to retain but instead sets this matter for further proceedings consistent with the court's analysis in this case.

## JURISDICTION

The court has jurisdiction over this matter under 28 U.S.C. §§ 1334(b) and 157(a) and (b).   This matter is a statutorily core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O) and is constitutionally core.   No party has contested the court's jurisdiction or its authority to make a final determination.   The court, therefore, has authority to hear this matter and make a final determination.

## BURDEN OF PROOF

As movants, the Marshes bear the burden of proof in this case.   *See Joseph A. Bass Co. v. United States*, 340 F.2d 842, 844 (8th Cir. 1965) ("It is fundamental that the burden of proof in any cause rests upon the party who, as determined by the pleadings or the nature of the case, asserts the affirmative of an issue and remains there until the termination of the action.").

## BACKGROUND

The parties do not dispute the relevant facts.

The Marshes commenced this case by filing a chapter 13 voluntary petition in September 2018.[1]   On their schedule A/B, they listed a $140,000 ownership interest in their residence.[2]   Freedom Mortgage Corporation asserted a $124,842.71 lien

---

[1] Chapter 13 Voluntary Pet., ECF No. 1 (Sept. 19, 2018).
[2] Schedule A/B, ECF No. 1, at 18 (Sept. 19, 2018).

against the residence as of the petition date.[3]   The Marshes claimed a $15,000 homestead exemption.[4]

The Marshes' chapter 13 plan provided that the trustee would make payments on Freedom Mortgage's secured claim during the Marshes' chapter 13 case and further provided that non-priority unsecured creditors would receive nothing.[5]   The Marshes' proposed plan would take a total of five years to complete.   Though the Marshes later modified their plan, the modification did not alter these key provisions.[6]  The court confirmed the Marshes' original plan in November 2018[7] and approved the plan modifications in May 2021.[8]   No party objected to confirmation of the original plan or approval of the May 2021 modification.

In April 2022, the Marshes filed a motion to sell their residence.[9]   The sale motion stated that the Marshes had "received an offer to purchase their home for $210,000," that the sale was scheduled to close on May 19, 2022, and that the sale would "result in net proceeds of approximately $78,000."[10]   The trustee filed a notice stating he had "reviewed the related motion and ha[d] no objection."[11]   No other party

---

[3] Freedom Mortg. Corp. Proof of Claim, Claim No. 25-1 (Nov. 21, 2018).   Though Freedom Mortgage amended its proof of claim in January 2019, the amended proof of claim did not alter the claim amount or secured status. Freedom Mortg. Corp. Am. Proof of Claim, Claim No. 25-1 (Nov. 21, 2018).
[4] Chapter 13 Voluntary Pet. 26, ECF No. 1 (Sept. 19, 2018).
[5] Chapter 13 Plan, ECF No. 2 (Sept. 19, 2018).
[6] First Am. Plan, ECF No. 47 (Apr. 15, 2021).
[7] Initial Confirmation: Order Confirming the Chapter 13 Plan as Filed, ECF No. 22 (Nov. 15, 2018).
[8] Order Confirming Chapter 13 Plan as Filed or Am. on or About 4/16/21, ECF No. 53 (May 7, 2021).
[9] Mot. to Sell Real Estate, ECF No. 64 (Apr. 25, 2022).
[10] *Id.*
[11] Trustee text entry, ECF No. 66 (Apr. 26, 2022).

3

objected to the sale.  The court entered an order granting the motion to sell the residence on April 26, 2022.[12]

In July 2022, the Marshes filed the present motion to retain proceeds from the sale of their former residence.[13]  The Marshes report that the sale produced $73,252 net proceeds and ask the court to enter an order permitting them to retain all proceeds "to be used for obtaining a new residence and other expenses."[14]  The chapter 13 trustee objected to the motion to retain, requesting that the Marshes remit to the trustee an amount sufficient to pay 100% of the filed and allowed non-priority unsecured claims against the Marshes' chapter 13 estate.[15]

The parties submitted briefs in support of their respective positions,[16] and the court held oral argument on the Marshes' motion.[17]  At oral argument and in his brief, the trustee argued that the proceeds from the sale of the Marshes' residence are property of the estate.  The Marshes argued the proceeds are not property of the estate and are otherwise unavailable to the trustee because the applicable commitment period that applied to the Marshes' chapter 13 case expired before the Marshes acquired the proceeds.

Having explained the relevant background information, the court next analyzes the issues the Marshes raise in their motion.

---

[12] Order Granting Mot. to Sell, ECF No. 67 (Apr. 26, 2022).

[13] Mot. to Retain Proceeds from Sale of Home, ECF No. 74 (July 27, 2022).

[14] *Id.*

[15] Trustee's Obj. to Mot. to Sell Property, ECF No 78 (July 28, 2022).  Though the document is titled an objection to debtors' motion to sell, the body of the document makes clear that the trustee intended the document as an objection to the Marshes' motion to retain proceeds.

[16] Brief in Supp. of Tr. Obj. to Debtors' Mot. to Retain Proceeds from Sale, ECF No. 92 (Sept. 27, 2022); Brief in Supp. of Mot. to Retain, ECF No. 93 (Sept. 28, 2022).

[17] Hearing Held, ECF No. 95 (Oct. 4, 2022).

## DISCUSSION

### I.   Post-Confirmation Property Replenishes the Chapter 13 Estate

The dispute in this case arises from a conflict between the provisions of the Bankruptcy Code that define property of the estate in a chapter 13 case and the provision that vests all property of the estate in the debtor at plan confirmation.

Sections 541 and 1306 govern property of the estate in a chapter 13 case. 11 U.S.C. §§ 541, 1306. Section 541 broadly defines property of the estate to include, "all legal or equitable interests of the debtor in property as of the commencement of the case" and "[p]roceeds, product, offspring, rents, or profits of or from property of the estate."[18] 11 U.S.C. § 541(a)(1), (6). In chapter 13 cases, § 1306 clarifies that "in addition to the property specified in § 541," the estate includes all property "of the kind" specified in § 541 "that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted . . . whichever occurs first." 11 U.S.C. § 1306(a). Thus, together, §§ 541 and 1306 make property of the estate all property the debtor (1) owns on the petition date and (2) acquires while the chapter 13 case is pending. 11 U.S.C. §§ 541, 1306.

Though §§ 541 and 1306 appear to capture for the estate both property the debtor acquires before plan confirmation and property the debtor acquires after confirmation, § 1327 arguably alters the estate's interest in property at the moment the court confirms the debtor's chapter 13 plan. *Compare* 11 U.S.C. § 541, *and* 11

---

[18] Though § 541(a)(6) excludes post-petition earnings, § 1306(a)(2) captures post-petition earnings from services for the chapter 13 estate. Because it does not appear that the proceeds from the sale of the Marshes' residence are earnings from services, the court does not focus on the Bankruptcy Code's treatment of post-petition earnings in this memorandum opinion.

5

U.S.C. § 1306, *with* 11 U.S.C. § 1327.  Section 1327 states, "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor . . . free and clear of any claim or interest of any creditor provided for by the plan."  11 U.S.C. § 1327(b)–(c).  Courts have interpreted this language to move property "out of the estate and into the possession and control of the debtor upon confirmation of the plan." *Fritz Fire Prot. Co., Inc. v. Chang (In re Chang)*, 438 B.R. 77, 81 (Bankr. M.D. Pa. 2010) (quoting 3 Keith M. Lundin, *Chapter 13 Bankruptcy* § 230.1, at 231–1 (3d ed. 2000 and 2004 Supp.)).

The apparent removal of property from the estate at confirmation under § 1327 is somewhat difficult to reconcile with § 1306's inclusion in the estate of all property the debtor acquires between the petition date and the date "the case is closed, dismissed, or converted."  *In re Clouse*, 446 B.R. 690, 699 (Bankr. E.D. Pa. 2010). Nonetheless, the reconciliation of these statutes may determine several outcomes in a chapter 13 case.  For example, determining the scope of post-confirmation property of the estate may control whether expenses incurred to preserve property are entitled to administrative priority as "actual, necessary costs of preserving the estate" under § 503(b)(1)(A).  *See, e.g.*, *Sec. Bank of Marshalltown v. Neiman*, 1 F.3d 687, 691 (8th Cir. 1993) ("the bankruptcy court was correct in finding the Chapter 13 estate continued post-confirmation and in classifying the post-petition debts [incurred to preserve debtor's principal asset] as administrative expenses").  The post-confirmation characterization of property also may determine whether subsections (2), (3), and (4) of § 362(a) automatically stay certain actions as against

6

"property of the estate." *See, e.g.*, *City of Chicago v. Fisher (In re Fisher)*, 203 B.R. 958, 964 (N.D. Ill. 1997) (determining city's post-confirmation actions to immobilize, tow, and destroy a vehicle that had previously vested in the debtor at confirmation did not violate § 362(a)(3) because the actions were not "to exercise control over property of the estate"). And in circumstances like those in the present case, reconciliation of § 1306 and § 1327 may determine the scope of a debtor's entitlement to retain post-confirmation property. *See, e.g.*, *Barbosa v. Solomon*, 235 F.3d 31 (1st Cir. 2000) (affirming the bankruptcy court's decision to require an increased dividend to unsecured creditors).

Five approaches to reconciling § 1306 and § 1327 have emerged. *See In re Baker*, 620 B.R. 655, 663–64 (Bankr. D. Colo. 2020) (listing approaches). In selecting among the competing approaches, the court endeavors to give effect to all relevant statutes; it may not give effect to one statute while ignoring others. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (explaining approach to reconciling Federal Arbitration Act, Fair Labor Standards Act, and National Labor Relations Act). The court will analyze each approach in turn.

### Estate Termination Approach

Courts adopting the "estate termination approach," conclude that, because § 1327 vests all property in the debtor at confirmation, the chapter 13 estate terminates at confirmation except as provided in the debtor's plan. *See Cal. Franchise Tax Bd. v. Jones (In re Jones)*, 420 B.R. 506, 512–13, 515 (B.A.P. 9th Cir. 2009) (describing then adopting the estate termination approach). As a result, "all

7

property of the estate, whether acquired before or after confirmation, becomes property of the debtor"—and may become vulnerable to post-petition creditors—unless the plan designates it property of the estate. *See In re Baker*, 620 B.R. 655, 663, 667–68 (Bankr. D. Colo. 2020) (adopting estate termination approach but concluding that § 362(a)(5)–(7) protected vested property); *In re Jones*, 420 B.R. at 515–16 (discussing creditor's ability to collect against property under the estate termination approach and debtor's access to credit and use of property after confirmation).  Proponents of this approach reason that it "effectuates the important choice [§] 1327(b) gives to the debtor . . . to vest in itself all, none, or some combination of estate property." *In re Jones*, 420 B.R. at 515.

Eighth Circuit precedent eliminates the estate termination approach as an available method of reconciling § 1306 and § 1327.  *See Sec. Bank of Marshalltown v. Neiman*, 1 F.3d 687, 690 (8th Cir. 1993) (concluding that the estate continues to exist after confirmation).[19]  Specifically, the Eighth Circuit expressly rejected the estate termination approach in *Neiman*, reasoning that the trustee's post-confirmation authority to administer the estate and "[s]everal sections of the bankruptcy code

---

[19] Although the Eighth Circuit conclusively rejected the estate termination approach in *Neiman*, the *Neiman* court did not clearly adopt any particular approach.  *See Sec. Bank of Marshalltown v. Neiman*, 1 F.3d 687, 690–91 (8th Cir. 1993).  In dicta, the court cited approvingly both authority adopting the estate preservation approach and authority adopting the estate transformation approach. *Id.* (first quoting *In re Root*, 61 B.R. 984, 985 (Bankr. D. Colo. 1986); then quoting *Riddle v. Aneiro (In re Aneiro)*, 72 B.R. 424, 429 (Bankr. S.D. Cal. 1987)).  The Eighth Circuit did not analyze the estate replenishment approach, likely because that approach developed later.  *See Neiman*, 1 F.3d at 689 (comparing the two lines of cases that existed at the time the court issued its decision).  As the below explanations of the estate preservation and estate termination approaches illustrate, those approaches reach inconsistent conclusions concerning the effect of § 1327.  Consequently, the court does not interpret *Neiman* to bind this court to either the estate preservation approach or the estate transformation approach in this case.

support [the] view that the estate continues to exist after confirmation." *Id.* at 690–91 (analyzing implication of 11 U.S.C. §§ 345, 347, 349(b)(3), 704, 1302(b)(1), and 1327 and determining estate continues after confirmation); *see also In re Rangel*, 233 B.R. 191, 195–96 (Bankr. D. Mass. 1999) (explaining that the estate termination approach would render several provisions of the Bankruptcy Code "meaningless or superfluous").   As the Eighth Circuit concluded in *Neiman*, the structure and operation of the Bankruptcy Code demonstrate that the estate continues to exist after confirmation.   *See Neiman*, 1 F.3d at 690–91 (discussing Code provisions that undermine the estate termination approach).   Consequently, the court rejects the estate termination approach.

## Estate Preservation Approach

The approach differing most from the estate termination approach is the "estate preservation approach."  *See In re Clouse*, 446 B.R. 690, 700 (Bankr. E.D. Pa. 2010) ("At one extreme is estate preservation; at the other extreme is estate termination."). Under the estate preservation approach, the estate continues after confirmation, retains all pre-confirmation property, and also includes any property the debtor acquires after confirmation.  *See e.g.*, *Annese v. Kolenda (In re Kolenda)*, 212 B.R. 851, 853 (W.D. Mich. 1997) (determining that "vesting" under § 1327 removes no property from the estate).   Courts adopting this approach reason that § 1327 is not relevant to the scope of property of the estate because § 1327's vesting provision merely "fix[es] the debtor's right to possess and deal with estate property after confirmation."  *Id.* at 853–54 (quoting *In re Fisher*, 198 B.R. 721, 733 (Bankr.

N.D. Ill. 1996)).  As a result, property of the debtor and property of the estate are "one
and the same" both before and after confirmation, and the automatic stay continues
to protect all property after confirmation.  *See id.* at 853–55 (discussing estate
preservation approach and need to preserve assets for creditors and protect priority).

The court determines the estate preservation approach does not adequately
reconcile § 1306 and § 1327.   Though this approach comports with § 1306, it
significantly undermines § 1327 by construing § 1327 as giving the debtor something
less than an immediate, absolute interest in vested property. *See Fritz Fire Prot. Co.,
Inc. v Chang (In re Chang)*, 438 B.R. 77, 80–81 (Bankr. M.D. Pa. 2010) (rejecting the
estate preservation approach because, among other reasons, vesting must mean more
than giving debtors the right to possession). This construction is at odds with the
mandate in § 1327(c) that "the property vesting in the debtor under subsection (b) of
this section is free and clear of any claim or interest of any creditor provided for by
the plan."  *See City of Chicago v. Fisher (In re Fisher)*, 203 B.R. 958, 962 (N.D. Ill.
1997) (emphasizing the effect of § 1327(c)).  The court rejects the estate preservation
approach as not recognizing the import of § 1327.

### Conditional Vesting Approach

Like the estate preservation approach, the "conditional vesting approach"
interprets § 1306 and § 1327 to make property simultaneously property of the debtor
and property of the estate.  Under the conditional vesting approach, § 1327 gives the
debtor "an immediate and fixed right to the future enjoyment of the bankruptcy
estate," but that right is not final until the debtor "has faithfully completed his

10

obligations under the plan and is entitled to a discharge." *Woodard v. Taco Bueno Rests., Inc.*, No. 4:05-CV-804-Y, 2006 WL 3542693, at *9 (N.D. Tex. Dec. 8, 2006). The result is that "assets that the debtor acquire[s] after confirmation must be included in the bankruptcy estate," and are subject to the trustee's administration. *Id*. at *10. Courts adopting this approach reason that it results in "a legitimate *quid pro quo*": in exchange for a discharge of debts and the ability to retain all assets under the protection of the automatic stay, the debtors have a continuing obligation to disclose all pre- and post-confirmation assets and account for them under the plan when appropriate. *Id.* at *9–10.

The conditional vesting approach suffers from the same flaws that made the court reject the estate preservation approach. The conditional vesting approach disregards § 1327's mandate that property vests in the debtor "free and clear" of creditors' claims at confirmation. *See City of Chicago v. Fisher (In re Fisher)*, 203 B.R. 958, 961 (N.D. Ill. 1997) (critiquing the estate preservation approach). In addition, because this approach makes parties' respective property rights conditional until those rights "vest" at plan completion, it creates uncertainty about the extent of each parties' interests in property during the life of the chapter 13 plan. The court declines to adopt an approach that creates such uncertainty.

### Estate Transformation Approach

Under the "estate transformation approach," the "estate consists of the property and future earnings of the debtor dedicated to fulfillment of the Chapter 13 plan," regardless of whether the debtor acquires that property before or after

confirmation. *In re Root*, 61 B.R. 984, 985 (Bankr. D. Colo. 1986).  Courts adopting the estate transformation approach reason that the post-confirmation estate must include property necessary to fulfill the plan because §§ 1322 and 1327(b) imply that the plan and confirmation order control the extent of vesting under § 1327. *See, e.g.*, *In re Adams*, 12 B.R. 540, 541–42 (Bankr. D. Utah 1981) (discussing exceptions under §§ 1322 and 1327 and adopting the estate transformation approach); 11 U.S.C. § 1322(b) (authorizing plan to provide for vesting after confirmation or in an entity other than the debtor); 11 U.S.C. § 1327(b) (vesting property in the debtor "[e]xcept as otherwise provided in the plan or order confirming the plan").  Courts developed this approach as "[a] compromise between the[] two extremes" of the estate termination and the estate preservation approaches. *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1340 (11th Cir. 2000).  It "attempts to honor, in part, the vesting provision of Section 1327(b), while acknowledging the inclusive language of Section 1306(a)." *In re Clouse*, 446 B.R. 690, 701 (Bankr. E.D. Pa. 2010).

Though "attractive in concept," neither the Bankruptcy Code's plain language nor the practicalities of chapter 13 support the estate transformation approach. *Fritz Fire Prot. Co., Inc. v. Chang (In re Chang)*, 438 B.R. 77, 82 (Bankr. M.D. Pa. 2010). Specifically, "no textual basis exists for distinguishing between post-confirmation property that is 'necessary' and that which is 'not necessary'" to fulfill the chapter 13 plan. *Annese v. Kolenda (In re Kolenda)*, 212 B.R. 851, 855 (W.D. Mich. 1997). Sections 1322 and 1327 are not so broad as to make property of the estate all property necessary to the plan; those provisions instead require that the plan or confirmation

order designate property that does not vest in the debtor at confirmation. *See* 11

U.S.C. § 1322(b)(9) ("the plan may . . . provide for the vesting of property of the estate,

on confirmation of the plan or at a later time, in the debtor or in any other entity");

11 U.S.C. § 1327(b) ("Except as otherwise provided in the plan or the order confirming

the plan, the confirmation of a plan vests all of the property of the estate in the

debtor."). Moreover, "this approach is difficult to apply in practice" because

reasonable parties may disagree about what property is "necessary" to fulfill the plan

at any given time, and the necessity of property may change throughout the chapter

13 case. *In re Chang*, 438 B.R. at 82. The Bankruptcy Code and chapter 13 practice,

therefore, do not support this approach.

## Estate Replenishment Approach

Finally, under the "estate replenishment approach," pre-confirmation property

of the estate becomes property of the debtor at confirmation, but post-confirmation

property becomes property of (*i.e.,* "replenishes") the estate. *City of Chicago v. Fisher

(In re Fisher)*, 203 B.R. 958, 962–63 (N.D. Ill. 1997); *In re Chang*, 438 B.R. at 83–84

(adopting what it dubbed the "reconciliation approach"). This approach reconciles

§ 1306 and § 1327 by construing vesting under § 1327 as an event that occurs only at

confirmation. *See In re Fisher*, 203 B.R. at 964 (summarizing sequence of events

under §§ 541, 1306(a), and 1327). Specifically, on the petition date, "§ 541 generally

sweeps the debtor's property into the estate." *Id.* Between the petition date and the

date of confirmation, § 1306 operates to augment the estate with any additional

property "of the kind specified in [§ 541] that the debtor acquires." *See id.*

(summarizing holding).   Each time the plan or modified plan is confirmed, § 1327 vests all then-existing property of the estate in the debtor, unless the plan or confirmation order provides otherwise. *See id.* (analyzing § 1327).   But any property the debtor acquires after confirmation "is not subject to § 1327(b) because it was not in existence at confirmation." *Fritz Fire Prot. Co., Inc. v. Chang (In re Chang)*, 438 B.R. 77, 83 (Bankr. M.D. Pa. 2010).   "After confirmation, § 1306(a) once again operates to deem property acquired by the debtor after confirmation as property of the estate." *In re Fisher*, 203 B.R. at 964.

Critics of the estate replenishment approach typically reject it as giving insufficient weight to either § 1306 or § 1327. *See, e.g.*, *In re Baker*, 620 B.R. 655, 669 (Bankr. D. Colo. 2020) (disagreeing with the estate replenishment approach); *Woodard v. Taco Bueno Rests.*, No. 4:05-CV-804-Y, 2006 WL 3542693, *8 (N.D. Tex. Dec. 8, 2006) (explaining importance of §§ 541 and 1306).   Some courts conclude that, by including post-confirmation property in the estate, the estate replenishment approach "reads § 1306 too broadly and gives insufficient weight to § 1327(b)," undermining "the chapter 13 bargain a debtor makes when trading his future income [devoted to the plan] for his assets." *In re Baker*, 620 B.R. at 669 (analyzing the benefits of the estate termination approach); *see also In re Chang*, 438 B.R. at 83 n.7 (noting commentator's concern with estate replenishment approach's broad inclusion in the estate of post-confirmation proceeds from vested assets).   Others, however, conclude that the estate replenishment approach reads § 1306 too narrowly and exaggerates the effect of § 1327 by pretending the debtor enjoys absolute entitlement

to vested property and ignoring that the Bankruptcy Code inherently conditions the debtor's entitlement to vested property on the faithful fulfillment of the plan. *Woodard*, 2006 WL 3542693, at \*7.  All are valid critiques.

Despite these flaws, the court determines the estate replenishment approach best reconciles § 1306 and § 1327.  *See In re Chang*, 438 B.R. at 84 (adopting estate replenishment approach but noting "[r]emedial legislative drafting would more appropriately solve the conundrum") (quoting *In re Ziegler*, 136 B.R. 497, 502 (Bankr. N.D. Ill. 1992)).  The estate replenishment approach gives effect to § 1306 by including in the estate, at least temporarily, all property the debtor acquires after the petition date but before the case is closed, dismissed, or converted.  *See City of Chicago v. Fisher (In re Fisher)*, 203 B.R. 958, 962 (N.D. Ill. 1997) (discussing effect of § 1306(a)).  It also gives effect to § 1327 by honoring the vesting of property free and clear of creditors' claims.  *In re Larzelere*, 633 B.R. 677, 682 (Bankr. D.N.J. 2021). Moreover, by making "a clear demarcation" between pre-confirmation property (which vests in the debtor) and post-confirmation property (which becomes property of the estate), the estate replenishment approach differentiates between property of the debtor and property of the estate more predictably than other approaches.  *In re Chang*, 438 B.R. at 83; *see also Barbosa v. Solomon*, 235 F.3d 31, 37 (1st Cir. 2000) (explaining that this approach "gives meaning to both sections 1306 and 1327, without the subjective analysis required by the [estate transformation] approach").  Finally, this approach "avoids creating a distinction among types of post-confirmation estate property where there exists no textual basis to do so." *In re Fisher*, 203 B.R. at

962–63. Consequently, the court adopts the estate replenishment approach in this case.

The court's conclusion that the estate replenishment approach governs the scope of post-confirmation property of the estate, however, is only the first step in its analysis. The court must next apply that approach to the sale proceeds in this case to determine whether the proceeds are property vested in the debtors or property of the chapter 13 estate.

## II.  The Proceeds from the Sale of Vested Property are Property of the Estate Under the Estate Replenishment Approach

As the court explained above, under the estate replenishment approach, absent contrary provisions in the plan or confirmation order, property the debtor acquires before confirmation first becomes property of the estate, then vests in the debtor at confirmation. *See e.g.*, *In re Fisher*, 203 B.R. at 964 (summarizing estate replenishment approach). But "all property of the kind specified in [§ 541] that the debtor acquires" after confirmation and "before the case is closed, dismissed, or converted" becomes property of the replenished chapter 13 estate. *Id.*

In this case, the Marshes seek to retain proceeds from the post-confirmation sale of their residence, arguing their interest in the proceeds vested at confirmation along with their residence. The trustee disagrees, arguing the proceeds are distinct from the vested residence and § 1306 brings them into the estate as property "of the kind" specified in § 541 that the debtors "acquire[d]" after the petition date. For the reasons explained below, the court determines (1) proceeds are distinct from the property sold to produce them, (2) proceeds are property "of the kind" specified in

16

§ 541, and (3) the Marshes "acquired" the proceeds after the confirmation date. Consequently, the proceeds are property of the estate in this case.

Courts disagree about whether proceeds from the sale of vested property are distinct from the property sold. *Compare Barbosa*, 235 F.3d at 35, 41–42 (affirming district court's decision that § 1327 "vested title to the realty in the Debtors at confirmation, but not the proceeds of the sale"), *with In re Larzelere*, 633 B.R. 677, 683 (Bankr. D.N.J. 2021) (equating proceeds with appreciation and "respectfully disagree[ing] with the holding in *Barbosa* that [proceeds are] . . . separate from the originally-valued real property in a confirmed chapter 13 case"). Some courts hold that proceeds are distinct, reasoning that proceeds differ materially from the property that generated them. *See, e.g.*, *Rodriguez v. Barrera (In re Barrera)*, 22 F.4th 1217, 1223, 1223 n.3 (10th Cir. 2022) (excluding sale proceeds from the converted estate because proceeds are "a property interest distinct from the physical house from which they were derived" and recognizing that this result potentially creates a conflict with § 1306); *In re Hawk*, 871 F.3d 287, 293–95 (5th Cir. 2017) (construing prior Fifth Circuit determination that proceeds from the sale of exempt property were new property and therefore not entitled to exemption in chapter 13 case) (analyzing *In re Frost*, 744 F.3d 384 (5th Cir. 2014)). Others conclude that, because the debtor owns vested property outright, the proceeds from the later sale of that property cannot become property of the estate. *In re Larzelere*, 633 B.R. at 683.

The court agrees with the decisions distinguishing sale proceeds from the property sold. *E.g.*, *In re Barrera*, 22 F.4th at 1223.

17

Courts that have reached the opposite conclusion have done so by equating proceeds with unrealized appreciation. *See In re Larzelere*, 633 B.R. at 683 (using the terms "proceeds" and "appreciation" interchangeably). Concededly, *unrealized appreciation* "cannot be separated from the underlying [property]" and, therefore, remains vested in the debtor so long as the debtor retains the property. *See id.* (equating proceeds with appreciation). Because unrealized appreciation is not separate property, those courts that equate proceeds with unrealized appreciation might find it illogical to treat sale proceeds as separate property. *See id.* ("because the [] Property ceased to be property of the estate, the proceeds of its later sale could not become property of the chapter 13 estate").

But treating proceeds as separate property logically results from the differences between sale proceeds and unrealized appreciation. *Compare In re Barrera*, 22 F.4th at 1219 (determining proceeds that arose before conversion inured to the debtors), *with In re Goetz*, Case No. 20-41493, 2022 WL 16857109, at *1 (Bankr. W.D. Mo. Nov. 10, 2022 (determining unrealized appreciation that arose before conversion inured to the estate). Unlike appreciation, *proceeds* in the form of cash or cash equivalents are entirely separate from the underlying property after the property is sold, with attributes and uses distinct from the property sold. *See In re Barrera*, 22 F.4th at 1223 (analyzing "whether . . . proceeds from the post-petition sale of property are identical to the underlying property that the debtor possessed on the Chapter 13 petition date" and concluding "they are not."); *c.f. In re Larzelere*, 633 B.R. at 683 ("One cannot separately pledge, mortgage, hypothecate or liquidate

*appreciation*." (emphasis added)).   The Bankruptcy Code recognizes this distinction by treating proceeds separately from the property that generates them.   *See, e.g.*, 11 U.S.C. § 541(a)(6) (separately including proceeds in the estate); *Id.* § 552(b)(1) (requiring separate pledge of proceeds).   Proceeds are, therefore, a separate, distinct form of property.[20]

In this case, because the proceeds are distinct from the Marshes' former residence and because the proceeds were not property of the estate at confirmation, the proceeds could not have vested in the Marshes at confirmation under § 1327.   *See* 11 U.S.C. § 1327(b) ("the confirmation of a plan vests all of the property of the estate in the debtor").   Consequently, under the estate replenishment approach, § 1306 makes the proceeds property of the replenished chapter 13 estate if they are "property of the kind specified in [§ 541]" that the Marshes "acquire[d]" after confirmation.

The proceeds are "property of the kind specified in [§ 541]."   Section 1306(a) captures for the post-petition estate "in addition to the property specified in section 541" the "kind[s]" of property specified in that section "that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted." 11 U.S.C. § 1306(a)(1).   Section 541(a) specifies several kinds of property that become

---

[20] The court acknowledges that this interpretation may incentivize debtors to retain appreciated property during a chapter 13 case. The court views this as a tolerable outcome to a complicated issue. As other courts have noted, "there is something unsavory" about permitting a debtor to "walk[] away with substantial cash proceeds" during the life of a chapter 13 case without amending the plan to fairly accommodate any change in circumstances or converting to chapter 7. *In re Barbosa*, 236 B.R. 540, 551–52 (Bankr. D. Mass. 1999), *aff'd*, 243 B.R. 562 (D. Mass. 2000), *aff'd*, 235 F.3d 31 (1st Cir . 2000); *see also In re Barrera*, 22 F.4th at 1219 (permitting debtors to retain proceeds in circumstance of conversion to chapter 7).   But there is something equally unsavory about the court ordering the sale of an appreciated residence against the debtor's wishes to generate proceeds for the estate. The court's decision in this case attempts to deter the pursuit of either unsavory outcome.

property of the estate, including "all legal or equitable interests of the debtor in property as of the commencement of the case."[21] 11 U.S.C. § 541(a)(1).  And though § 541(a)(1) only captures for the estate property the debtor owned "as of the commencement of the case," § 1306(a)(1) expands that temporal restriction by imposing its own distinct, post-petition time period to the *kinds* of property § 541 specifies.  *See Carroll v. Logan*, 735 F.3d 147, 150–51 (4th Cir. 2013) (concluding § 1306 captured for the estate an inheritance acquired more than 180 days after the petition date despite the 180-day temporal restriction under § 541(a)(5)).  In this case, the Marshes' interest in the proceeds certainly is "a legal or equitable interest of the debtor[s] in property" within the meaning of the first part of § 541(a)(1).  And though the Marshes did not have an interest in the proceeds "as of the commencement of the case," under § 1306(a)(1)'s expanded temporal framework, the Marshes' interest in the proceeds are nonetheless "legal or equitable interests of a debtor in property" "of the kind specified in [§ 541(a)(1)]."

Finally, the court determines the Marshes "acquire[d]" the proceeds within the relevant period under § 1306(a)(1).  Black's Law Dictionary broadly defines the term "acquire" to mean "1. To gain possession or control of; to obtain," or "2. To gain as an attribute of form <the statute acquired judicial gloss>."  *Acquire*, Black's Law Dictionary (11th ed. 2019).  Merriam Webster similarly defines the term "acquire," in relevant part, as "to get as one's own," meaning either "a: to come into possession or

---

[21] Though § 541(a)(6) also includes in the estate "proceeds . . . from property of the estate," it does not include in the estate proceeds from property that is no longer property of the estate.  Thus, because vested property is no longer property of the estate, § 541(a)(6) does not capture proceeds from vested property as property of the estate.

control of often by unspecified means," or "b: to come to have as a new or added characteristic, trait or ability (as sustained by effort or natural ability)." *Acquire*, merriam-webster.com, https://www.merriam-webster.com/dictionary/acquire (last visited Dec. 8, 2022). In this case, the Marshes "gain[ed] possession or control of" or "c[a]me into possession or control of" the proceeds when they sold the property after confirmation. Likewise, though the proceeds arose from the residence, they, at a minimum, became proceeds "as an attribute of form" or as "a new or added characteristic" after confirmation and before the end of the Marshes' chapter 13 case. Thus, the Marshes "acquired" the proceeds during the relevant period under § 1306(a)(1).

In summary, the court determines the proceeds are distinct property "of a kind" specified in § 541 that the Marshes "acquired" during the relevant period. Consequently, § 1306(a)(1) makes them property of the chapter 13 estate under the estate replenishment approach.[22]

---

[22] The court notes that the proceeds would also be property of the estate under the estate preservation approach, conditional vesting approach, and the estate transformation approach. The proceeds would become property of the estate under the estate preservation and conditional vesting approaches because, as the court explained above, those approaches make property of the estate all property the debtor acquires before or after confirmation. The proceeds also would be property of the estate under the estate transformation approach as "proceeds . . . from property of the estate" under §§ 541 and 1306. Specifically, under the estate transformation approach, the residence would have remained property of the estate post-confirmation because it was necessary to the completion of the Marshes' confirmed plan. As a result, the proceeds would have been "proceeds . . . from property of the estate" within the meaning of § 541(a)(6) and would themselves have become property of the estate under § 1306 as "property of the kind specified in [§ 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted."

### III.    Section 1322 Does Not Exclude the Proceeds from the Replenished Estate

In addition to their arguments concerning the scope of the post-confirmation chapter 13 estate, the Marshes argue alternatively that the court must permit them to retain the proceeds in this case because their thirty-six-month applicable commitment period "suggests that the debtors are not required to commit disposable income received after that applicable commitment period to pay unsecured creditors."[23]  Brief in Supp. of Mot. to Retain, ECF No. 93 (Sept. 28, 2022).  The court disagrees.

The Marshes' argument relies on a temporal limitation set forth in 11 U.S.C. § 1325.  Subsection (b)(1) of that section states,

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
>
> . . .
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

*Id.*

The court rejects the Marshes' proposal to apply § 1325(b)(1)'s applicable commitment period outside the context of initial plan confirmation.  Section 1325(b) applies only to the confirmation of a debtor's initial plan.  *Compare* 11 U.S.C. § 1325 ("Confirmation of plan"), *with* 11 U.S.C. § 1329 ("Modification of plan after

---

[23] In making this argument, the Marshes appear to assume that the sale proceeds are disposable income.  Because the court otherwise determines the Marshes' argument relies on an inaccurate interpretation of the Bankruptcy Code, the court does not further determine whether the proceeds would constitute disposable income under § 1325(b).

confirmation"). And § 1325(b)(1) applies only "[i]f the trustee or a holder of an allowed secured claim objects to the confirmation of the plan." 11 U.S.C. § 1325(b). In this case, the Marshes are not seeking initial confirmation, and neither the trustee nor a holder of an allowed secured claim has objected to confirmation. Nothing in the Bankruptcy Code would otherwise make § 1325(b)(1) apply to the Marshes' motion to retain proceeds. *See* 11 U.S.C. § 1325(b)(1). Consequently, the court declines to apply § 1325(b)(1) to the Marshes' motion to retain.

Moreover, even if the court construes the present motion as a proposed modification to the Marshes' confirmed plan, the applicable commitment period under § 1325(b) would not govern the proposed modification because the applicable commitment period does not apply to plan modifications. *See Forbes v. Forbes (In re Forbes)*, 215 B.R. 183, 191–93 (B.A.P. 8th Cir. 1997) (analyzing § 1329 and concluding the so called "best efforts test" under § 1325(b)(1) "is not a factor to be considered by a court in approving postconfirmation modifications"). After the initial confirmation, § 1329—not § 1325—governs approval of plan modifications. *Id.* at 191. Though § 1329 incorporates some provisions of § 1325, it does not incorporate the applicable commitment period under § 1325(b). *See id.* (quoting 11 U.S.C. § 1329(b)(1)). Instead, § 1329(c) authorizes the court to approve a post-confirmation plan modification that provides for payments over a period longer than thirty-six months in below median cases, so long as the modified plan does not expire more than five years after the first payment under the original plan came due. 11 U.S.C. § 1329(c). Thus, even if the court construes the Marshes' motion to retain proceeds as a proposed

plan modification, the applicable commitment period under § 1325(b)(1) does not apply.

Finally, even if the applicable commitment period in § 1325(b)(1) applied, it would not prevent the Marshes from making payments after the thirty-sixth month of their plan. The court agrees with the Marshes' assertion that "the applicable commitment period is a temporal requirement and not a monetary requirement" under *Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652, 660 (8th Cir. 2008). Brief in Supp. of Mot. to Retain, ECF No. 93 (Sept. 28, 2022). But the thirty-six-month applicable commitment period that applies to below median debtors "acts solely to set the minimum term of a chapter 13 plan that [below-median] debtors may be compelled to propose." *In re Rodger*, 423 B.R. 591, 595 (Bankr. D.N.H. 2010); *see also In re Frederickson*, 545 F.3d at 660 (quoting authority stating that the applicable commitment period creates a temporal minimum). "If a below median debtor elects to propose a longer term than three years, and the Court for cause approves such longer term, the requirements for payment of disposable income in years four and five of the plan remain the same as those in the first three years of the plan." *In re Rodger*, 423 B.R. at 595. In this case, the Marshes obtained confirmation of a sixty-month plan. Order Confirming the Chapter 13 Plan, ECF No. 22 (Nov. 15, 2018). Section 1325(b)(1), therefore, does not prevent the court from enforcing the Marshes' plan after the thirty-sixth month. Thus, § 1325(b)(1) does not undermine the court's determination that the proceeds are property of the estate in this case.

## IV.   The Court's Analysis Does Not Resolve the Marshes' Motion to Retain

The court's determination that the proceeds are property of the Marshes' estate, however, does not resolve the Marshes' motion to retain.  Because the Marshes' confirmed plan requires ongoing payments on their mortgage, the Marshes' sale of their residence and proposal to retain the proceeds from that sale contravene the terms of their confirmed plan. *See* Chapter 13 Plan, ECF No. 2 (Sept. 19, 2018). Thus, the Marshes, in effect, seek to modify their confirmed plan without filing a modified plan or otherwise specifying the terms of their proposed modification.  The court will not rule on the Marshes' motion to retain until the Marshes clarify the nature and effect of their proposed modification.

Moreover, the court's determination that the proceeds are property of the estate does not necessarily prevent the Marshes from retaining at least a portion of the proceeds under a modified plan.  Section 1329, which governs plan modification, does not necessarily require that debtors pay the value of all post-confirmation assets to the estate. 11 U.S.C. § 1329.  Instead, § 1329(b)(1) requires that modified plans comply with §§ 1322(a), 1322(b), 1323(c), and 1325(a), by, among other prerequisites, providing for submission of future income as necessary to execute the plan, being proposed in good faith, and satisfying § 1325(a)(4)'s liquidation-analysis requirement "as of the effective date of the plan"—which, in the Eighth Circuit, is a date that precedes plan modification.  11 U.S.C. § 1329(b)(1); *Forbes v. Forbes (In re Forbes)*, 215 B.R. 183, 189 (B.A.P. 8th Cir. 1997) ("Regarding the effective date of the plan, there is only one plan.  The effective date is not altered by modification of the plan, for the modified plan remains, ever constant, the plan.").  Whether the Marshes'

proposed modification satisfies these prerequisites is a mixed question of law and fact, requiring evidence not before the court. Consequently, the court does not presently rule on the Marshes' motion to retain proceeds and instead sets this matter for further proceedings consistent with the court's analysis in this case.

## CONCLUSION

For the reasons set forth in this memorandum opinion, the court determines the proceeds from the sale of the Marshes' residence are property of the chapter 13 estate. The court will enter a separate notice and order on the docket setting this matter for further proceedings consistent with this memorandum opinion.

IT IS SO ORDERED.

Dated:  1/17/2023                    /s/ Brian T. Fenimore
                                     U.S. Chief Bankruptcy Judge